**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | |
|---|---|
| Bryan Pipkin,<br><br>    Plaintiff,<br><br>v.<br><br>Duke Energy Carolinas, LLC,<br><br>    Defendant. | **COMPLAINT**<br>**(Jury Trial Demanded)** |

The Plaintiff complaining of the Defendant respectfully alleges as follows:

**PARTIES & JURISDICTION**

1. The Plaintiff Bryan Pipkin is a citizen and resident of Darlington County, South Carolina.

2. The Defendant Duke Energy Carolinas, LLC d/b/a Duke Energy is a North Carolina power company that owns and operates an energy plant in Darlington County, South Carolina.

3. This action alleges a violation of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §§ 4301 et seq. ("USERRA") and a pendant state law claim of wrongful discharge arising under the common law of South Carolina.

4. The wrongful discharge against Defendant Duke Energy relates to a violation of the South Carolina law set forth in S.C. Code Ann. § 16-17-560, which makes it unlawful for an employer to terminate an employee for expressing a political opinion.

5. This Court has subject matter jurisdiction of the federal claim alleged (38 U.S.C. § 4323(b)(3) and can exercises pendant jurisdiction over the wrongful discharge claim which is also related to Plaintiff's employment by Defendant.

6. This Court has personal jurisdiction over these parties and is the proper venue for this action because the events giving rise to it occurred in Darlington County, South Carolina and the parties have sufficient connections to Darlington County.

7. Darlington County is in the Florence Division, therefore this is the proper division for this case.

8. Plaintiff requests a jury trial on this action including on all triable fact issues.

9. No filing fee is required for this lawsuit pursuant to 38 U.S.C. § 4323(h).

## FACTUAL ALLEGATIONS

10. Plaintiff was hired by Defendant in approximately 1996 as a CT Technician and Plant Supervisor.

11. Plaintiff worked for Defendant for 24 years. From 1996 to 2008 at the Darlington County Turbine Plant and from 2008 to 2020 at the Robinson Nuclear Plant in Hartsville, South Carolina.

12. Plaintiff never received any disciplinary actions during his tenure.

13. Plaintiff consistently met or exceeded the legitimate expectations of his job.

14. Plaintiff was promoted several times during his tenure and ultimately reached the title of Maintenance Superintendent.

15. Plaintiff is a 90% disabled military veteran who served 32 years.

16. Plaintiff's final title was Senior Tech Job Sponsor.

17. This title was a demotion from Maintenance Superintendent which occurred because of Plaintiff being called for a military deployment in 2016.

18. This demotion resulted in a 5-7% in annual bonus reduction.

19. Plaintiff was specifically reduced one tier on Defendant's bonus plan, but his wages otherwise stayed the same.

20. Plaintiff's military deployment was the motivating factor for his demotion.

21. Around, but before June 15, 2020, Plaintiff expressed political opinions on Facebook in response to a news article about Richard Petty Motorsports and Bubba Wallace's decision to paint "#Blacklivesmatter" on Wallace's racecar for the Martinsville Virginia NASCAR race in June 2020.

22. Plaintiff commented something to the effect of:

If we had put White Lives Matter on a car, we would have been labeled racist and bigots, but racist MFers can do what they want and there is no accountability…

23. Other comments in the thread apparently criticized the riots going on in several cities at that time and one commenter suggested "We are going to have to fight to get our country back . . . The fight is coming soon my friend."

24. Plaintiff either in response to that or another comment, commented "buy more ammo."

25. Plaintiff does not have a copy of the post; so, the above recitation is an approximation.

26. The above was all part of a public discussion about the killing of George Floyd, protests, riots, race, security, and the state of our nation.

27. These are matters of public concern and political import.

28. The above speech was about matters of public concern.

29. Plaintiff was called to meet with DeWayne Walters, one of Defendant's human resources officials, on June 15, 2020.

30. Plaintiff was asked about his posts in that meeting. He told Mr. Walters that his intention was to point out that he felt saying "Black Lives Matter" was divisive and that he believed it undermined the premise that all lives mattered. He stated his remark "buy ammo" was about protecting himself and his home given the current state of affairs in the nation.

31. Plaintiff agreed that his postings were not politically correct, and he could have worded his thoughts more respectfully.

32. Mr. Walters told Plaintiff he would probably be reprimanded in some way but should be ok because he had a stellar record.

33. Mr. Walters and Plaintiff also discussed using the incident as a teaching example for other employees at the plant which Plaintiff was agreeable to.

34. Plaintiff was terminated on June 22, 2020, based on the content of his Facebook posts.

35. Defendant wrote on Plaintiff's termination letter: "The offensive, violent, and potentially threatening nature of these posted comments is unacceptable and not conducive to Pipkin's continued employment with Duke Energy."

36. The day Plaintiff was terminated, several management officials on site told him they tried to explain to corporate that Plaintiff was valued and did not need to be terminated, but that the corporate people "only wanted to fire someone to say they took some action."

37. Plaintiff was not given the benefit of Defendant's progressive discipline policy.

### FIRST CAUSE OF ACTION
### (USERRA Violation)

38. Plaintiff reallages the foregoing where consistent.

39. Plaintiff was demoted because of his military service and a pending deployment.

40. That demotion cost him approximately 5-7% on his annual bonus. Specifically, the demotion dropped him one tier in Defendant's bonus plan.

41. This claim is not subject to a state or federal statute of limitations. 38 U.S.C. § 4323(i); 38 U.S.C. § 4327(b).

42. The Defendant is not prejudiced by the timing of this lawsuit.

43. Plaintiff's demotion is a violation of USERRA specifically the reemployment provisions found within 38 U.S.C. § 4313.

44. Plaintiff's military deployment was the motivating factor in his demotion.

45. This was a willful violation of USERRA and Defendant knew or should have known it needed to protect Plaintiff's job status, pay, and seniority irrespective of his military service but failed to do so.

46. Plaintiff is entitled to recover all lost wages and benefits including backpay and front pay, liquidate damages, attorney's fees and costs, pre-judgment interest, equitable relief requiring Defendant to comply with the provisions of USERRA and any other relief he may be entitled to under USERRA.

## SECOND CAUSE OF ACTION
(Public Policy–Wrongful Discharge)

47. Plaintiff reallages the foregoing where consistent.

48. S.C. Code § 16-17-560 says:

It is unlawful for a person to assault or intimidate a citizen, **discharge a citizen from employment or occupation**, or eject a citizen from a rented house, land, or other property **because of political opinions or the exercise of political rights and privileges guaranteed to every citizen by the Constitution and laws of the United States or by the Constitution and laws of this State.**

A person who violates the provisions of this section is guilty of a misdemeanor and, upon conviction, must be fined not more than one thousand dollars or imprisoned not more than two years, or both.

5

S.C. Code Ann. § 16-17-560

49.     Defendant terminated Plaintiff because he shared his political views on Facebook.

50.     Plaintiff had the right to state his views even if those views were stated in a way that was a politically incorrect or offensive.

51.     Defendant violated South Carolina law by terminating Plaintiff.

52.     Defendant willfully and intentionally terminated Plaintiff because of his Facebook post.

53.     Defendant has a robust general counsel and compliance office and knew better or should have known better.

54.     Plaintiff is entitled to an award of damages resulting from Defendant's violation and wrongful termination including lost wages, lost benefits, lost earning capacity, stress and anxiety, pain and suffering, and embarrassment and humiliation.

55.     Plaintiff is also entitled to an award of punitive damages in addition to his actual losses to discourage Defendant from repeating the behavior it engaged in and to punish the Defendant for what it did.

**PRAYER FOR RELIEF**

56.     Plaintiff realleges the foregoing where consistent.

57.     Plaintiff requests a jury trial on his claims and all triable issues.

58.     Plaintiff requests that the jury award, within its discretion, all damages he seeks on the above claims including punitive damages where legally cognizable.

59.     Plaintiff requests that the Court award him all equitable relief it deems just and necessary up to and including reinstatement or front pay.

60.     Plaintiff also requests pre-judgment interest.

                **CROMER BABB PORTER & HICKS, LLC**

              BY:   s/J. Paul Porter
                    J. Paul Porter (#100723)
                    1418 Laurel Street, Ste. A
                    Post Office Box 11675
                    Columbia, South Carolina 29211
                    Phone: (803) 799-9530
                    Fax: (803) 799-9533
                    paul@cbphlaw.com

March 5, 2021
Columbia, South Carolina