UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| BRYAN PIPKIN, ) | Civil Action No. 4:21-cv-0642-SAL-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| DUKE ENERGY PROGRESS, LLC, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## I.     INTRODUCTION

This action arises from Plaintiff's termination of employment with Defendant.  Plaintiff alleges causes of action for violation of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §§ 4301 et seq. ("USERRA") and a pendant state law claim of wrongful discharge in violation of public policy.  Presently before the Court is Defendant's Partial Motion to Dismiss (ECF No. 12) Plaintiff's state law claim for wrongful discharge in violation of public policy. Plaintiff filed a Response (ECF No. 18), and Defendant filed a Reply (ECF No. 20).  All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(g), DSC.  This report and recommendation is entered for review by the district judge.

## II.     FACTUAL ALLEGATIONS

Only the allegations relevant to Defendant's Motion are set forth herein.  Plaintiff was hired by Defendant in 1996 as a CT Technician and Plant Supervisor. Am. Compl. ¶ 10.  From 1996 until 2008, Plaintiff worked at the Darlington County Turbine Plant, and from 2008 until 2020, Plaintiff worked at the Robinson Nuclear Plant in Hartsville, South Carolina.  Am. Compl. ¶ 11.  Plaintiff

never received any disciplinary actions during his tenure. Am. Compl. ¶ 12. In June of 2020, Plaintiff expressed political opinions of Facebook in relation to a news article about Richard Petty Motorsports and Bubba Wallace's decision to paint "#Blacklivesmatter" on his race car for the Matinsville, Virginia NASCAR race taking place in June. Am. Compl. ¶ 21. Plaintiff asserts that he does not have a copy of the comments he made, but they were something to the effect of "If we had put White Lives Matter on a car, we would have been labeled racist and bigots, but racist MFers can do what they want and there is no accountability." Am. Compl. ¶¶ 22, 25.[1] In response to a another comment in the thread along the lines of "we are going to have to fight to get our country back . . . The fight is coming soon my friend," Plaintiff responded, "buy more ammo." Am. Compl. ¶¶ 23-24. Plaintiff was called to meet with DeWayne Walters, one of Defendant's human resources officials, on June 15, 2020. Am. Compl. ¶ 29. Plaintiff was asked about his posts in that meeting, and he told Walters that his intention was to point out that he felt saying "Black Lives Matter" was divisive and he believed it undermined the premise that all lives mattered. Am. Compl. ¶ 30. He also stated that his remark "buy ammo" was about protecting himself and his home given the current state of affairs in the nation. Am. Compl. ¶ 30. Plaintiff agreed that his postings were not politically correct, and he could have worded his thoughts more respectfully. Am. Compl. ¶ 31. Plaintiff was

---

[1]Defendant attaches a copy of Plaintiff's Facebook comments to its motion. A court can consider matters outside the pleadings when they are "integral to and explicitly relied on in the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011) (citations omitted); see also Int'l Ass'n of Machinists & Aerospace Workers v. Haley, 832 F. Supp. 2d 612, 622 (D.S.C. 2011), aff'd, 482 Fed. Appx. 759 (4th Cir. 2012) ("In evaluating a motion to dismiss under Rule 12(b)(6), the Court … may also consider documents attached to … the motion to dismiss, so long as they are integral to the complaint and authentic.") (internal quotations and citations omitted). The Facebook comments are integral to the Amended Complaint because Plaintiff was terminated as a result of those comments, and they are explicitly relied on therein. Plaintiff's actual comment was ""Yes, fuck NASCAR, done with it … if u had #whitelivesmatter, you are racist and bigot, etc. But them MFers can use racist shit all the time … All races do it … trying to erase and changes [sic] history removing a historical flag now." See Pl. Facebook Comment (ECF No. 12-2). Plaintiff does not challenge the authenticity of Defendant's exhibit.

terminated on June 22, 2020, based on the content of his Facebook posts. Am. Compl. ¶ 34. Plaintiff's termination letter stated "[t]he offensive, violent, and potentially threatening nature of these posted comments is unacceptable and not conducive to [Plaintiff's] continued employment with Duke Energy." Am. Compl. ¶ 35. Plaintiff was not given the benefit of Defendant's progressive discipline policy. Am. Compl. ¶ 37.

### III. STANDARD OF REVIEW

Defendants move for dismissal pursuant to Fed.R.Civ.P. 12(b)(6). A Rule 12(b)(6) motion examines whether Plaintiff has stated a claim upon which relief can be granted. The United States Supreme Court has made clear that, under Rule 8 of the Federal Rules of Civil Procedure, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555.

Expounding on its decision in Twombly, the United States Supreme Court stated in Iqbal:

> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Iqbal, 556 U.S. at 677-78 (quoting Twombly, 550 U.S. at 555, 556, 557, 570) (citations omitted); see also Bass v. Dupont, 324 F.3d 761, 765 (4th Cir.2003).

-3-

## IV.  DISCUSSION

Plaintiff alleges that he was wrongfully discharged in violation of South Carolina public policy, and relies on S.C. Code Ann. § 16-17-560, which states "It is unlawful to . . . discharge a citizen from employment or occupation . . . because of political opinions or the exercise of political rights and privileges guaranteed to every citizen by the Constitution and laws of the United States or by the Constitution of this State." Defendant argues that Plaintiff's claim fails because the statute upon which Plaintiff relies is limited to matters directly related to the executive, legislative, and administrative branches of Government, such as political party affiliation, political campaign contributions, and the right to vote. In response, Plaintiff asserts that the statute has not been interpreted as narrowly as Defendant suggests.

Generally speaking, South Carolina law allows an employer to discharge an employee without incurring liability for good reason, no reason, or bad reason. Culler v. Blue Ridge Elec. Coop., 309 S.C. 243, 245, 422 S.E.2d 91, 92 (1992). However, the South Carolina Supreme Court has recognized a "public policy" exception to this doctrine. Ludwick v. This Minute of Carolina, Inc., 287 S.C. 219, 225, 337 S.E.2d 213, 216 (1985). In Ludwick, the court held that an employee has a tort cause of action for wrongful discharge where there is a retaliatory discharge of the at-will employee in violation of a clear mandate of public policy. Id. The public policy exception clearly applies in cases where the employer either (1) requires the employee to violate the law, or (2) the reason for the employee's termination is itself a violation of criminal law. Lawson v. South Carolina Dep't of Corrections, 340 S.C. 346, 350, 532 S.E.2d 259, 260 (2000). The statute at issue here, S.C. Code Ann. § 16-17-560 specifically provides that "a person who violates the provisions of this section is guilty of a misdemeanor and, upon conviction, must be fined not more than one thousand dollars or imprisoned not more that two years, or both." Chapter 17 of Title 16 is entitled "Offenses

Against Public Policy." The South Carolina Supreme Court has held that an employer's violation of this statute gives rise to a cause of action for wrongful discharge in violation of public policy. See Culler v. Blue Ridge Elec. Co-op., Inc., 309 S.C. 243, 246, 422 S.E.2d 91, 93 (1992) (holding that an employee's discharge because he refused to contribute to a political action fund gives rise to a claim for wrongful discharge under Ludwick and S.C. Code Ann. § 16-17-560).

Plaintiff and Defendant disagree as to whether Plaintiff's Facebook posts amount to "political opinions or the exercise of political rights and privileges" such that Defendant's discharge of Plaintiff because of those posts would violate § 16-17-560. Defendant relies on Vanderhoff v. John Deere Consumer Prod., Inc., No. C.A. 3:02-0685-22, 2003 WL 23691107 (D.S.C. Mar. 13, 2003). In Vanderhoff, the plaintiff was discharged from employment for displaying a confederate flag sticker on his work toolbox. Id. at *1. He alleged a cause of action for wrongful discharge, alleging that his discharge was in violation of public policy set forth in § 16-17-560. This Court concluded that the display of a confederate flag decal is not a political opinion or the exercise of any political right or privilege as that phrase is intended by § 16-17-560:

> This court concludes that the display of a confederate flag decal is not a political opinion or the exercise of any political right or privilege as that phrase is intended by this criminal statute because such expression is not protected as a matter of clear public policy either as set forth in section 16–17–560 or otherwise. Section 16–17–560 expressly protects only "political" opinion and expression. The statute does not define what is meant by this phrase. However, because section 16–17–560 is a criminal statute, it must be construed narrowly. See State v. Prince, 517 S.E.2d 229, 232 (S.C.Ct.App.1999) ("Criminal statutes must be strictly construed against the state and in favor of the defendant."). Further, the available case law suggests the state court would not construe the phrase to extend to all opinion and expression which, if a matter of public concern, may be protected under the First Amendment of the United States Constitution or under Article I, section 2, of the Constitution of the State of South Carolina.1 Rather, this court concludes that the political opinion and expression covered by section 16–17–560 extends only to matters directly related to the executive, legislative, and administrative branches of Government, such as political party affiliation, political campaign contributions, and the right to vote. See Culler v. Blue Ridge Elec. Coop., Inc., 422 S.E.2d 91, 92–93 (S.C.1992) (finding that if plaintiff was discharged "because he refused to contribute to a political action fund

> [supported by his employer], he would have a cause of action under Ludwick and ... [section] 16–17–560").

Id. at *2. Under this Court's reasoning in Vanderhoff, Plaintiff's Facebook comments do not amount to "political opinions or the exercise of political rights and privileges" as set forth in § 16-17-560.

Plaintiff argues that case law addressing § 16-17-560 subsequent to Vanderhoff has not so narrowly construed the statute. Plaintiff points to the South Carolina Court of Appeals' 2019 opinion in Owens v. Crabtree, 425 S.C. 513, 823 S.E.2d 224 (Ct. App. 2019), reh'g denied (Feb. 21, 2019), cert. denied (June 28, 2019) . In Owens, the plaintiff asserted a cause of action for wrongful discharge in violation of § 16-17-560. The plaintiff, an employee of an engineering firm, engaged in various actions protesting his firm's involvement in building a parking garage near Shem Creek. Id. at 225-27. In addition to setting up a Facebook page entitled "Saving Shem Creek," the plaintiff also

> attended Town council meetings, lobbied council members, circulated a petition asking the Town to rescind its approval of the project, made and distributed "Save Shem Creek" bumper stickers, created a "Save Shem Creek" corporation for which he was also a board member, and sent letters and emails to the Town's mayor.

Id. at 226. Plaintiff was terminated from his position at the engineering firm because "he had used company time, equipment, materials, and employees to engage in 'an activity that ultimately harmed [the firm].'" Id. at 227. Plaintiff filed suit against his employer and alleged a cause of action for wrongful discharge in violation of § 16-17-560. Id. The Court of Appeals stated "it is not disputed that [the plaintiff's] use of the political process to actively oppose the Shem Creek project was within his rights as a private citizen." Id. at 229. However, the court determined that Plaintiff was not terminated for use of the political process or for "exercising his right to engage in speech opposing the Shem Creek project," but for doing so during work hours with work equipment. Id. Thus, the court held that the plaintiff's termination did not violate § 16-17-560. Id.

Plaintiff in the present case argues that Owens provides an expanded view of what constitutes "political opinions or the exercise of political rights and privileges" under § 16-17-560 to the exercise of free speech in general, and is not limited to "matters directly related to the executive, legislative, and administrative branches of Government, such as political party affiliation, political campaign contributions, and the right to vote" as set forth in Vanderhoff. Specifically, Plaintiff points to the following analysis in Owens:

> **It is undisputed both the Federal and South Carolina Constitutions provide for freedom of speech, of assembly, and the right to petition the government for redress of grievances.** [internal citation]. Furthermore, it is not disputed that Owens's use of the political process to actively oppose the Shem Creek project was within his rights as a private citizen. **We do not believe, however, that Owens's decision to enjoy those rights was the reason for his termination**; rather, the evidence shows Owens was discharged because he used company equipment, materials, and time to engage in an activity that was a violation of company policy and unquestionably detrimental to ADC.

Owens, 823 S.E.2d at 229 (emphasis added). Plaintiff argues, "the Court of Appeals' analysis says that terminating an employee for exercising his free speech rights about matters of public concern would be actionable under S.C. Code Ann. § 16-17-560 if the record reflects the employee was fired because of his speech." Pl. Resp. p. 5.

Plaintiff further argues that the analysis in Owens is consistent with dicta set forth in Collins v. Charleston Place, LLC, No. 2:15-CV-4465-PMD-BM, 2017 WL 3167330, at *5 (D.S.C. July 26, 2017), aff'd, 720 F. App'x 701 (4th Cir. 2018). Collins involved an employee who was fired after expressing her opinions on a Black Lives Matter protest at work. The employee in Collins alleged only race discrimination and did not claim she was fired in violation of § 16-17-560. However, the court noted that the initial reason given for the plaintiff's termination–"that he could not have her expressing political opinions"– "might not be legitimate under state law," citing § 16-17-560. Id. at *5 (emphasis added). However, the court also included a but see citation to Vanderhoff,

-7-

recognizing its holding that § 16-17-560 applies only to "matters directly related to the executive, legislative, and administrative branches of Government, such as political party affiliation, political campaign contributions, and the right to vote and does not cover all opinion and expression on matters of public concern that enjoy constitutional protection." Id. (internal quotations omitted). This dicta in Collins fails to support Plaintiff's argument. First, it was the plaintiff's employer, and not the court, that described the plaintiff's comments as political. The court characterized the plaintiff's comments as "expressing her views on sensitive topics." Id. at *4. There was no analysis in the case regarding whether the plaintiff's comments were political. Further, the court stated that plaintiff's termination "might" violate state law. Id. at *5. Finally, the court included a citation to Vanderhoff, limits the application of § 16-17-560. Id.

    In addition, the conduct of the plaintiff in Owens is distinguishable from Plaintiff's conduct in the present case, and the holding in Owens is not inconsistent with Vanderhoff. In Owens, the plaintiff "exercised his political rights and privileges," S.C. Code Ann. § 16-17-560, by attending town council meetings, lobbying council members, and circulating a petition asking the town to rescind its approval of the project. These actions are not inconsistent with Vanderhoff's holding that § 16-17-560 is limited to "matters directly related to the executive, legislative, and administrative branches of Government." In the present case, there are no allegations that Plaintiff engaged in the political process as the Owens plaintiff did. Plaintiff expressed his opinion in Facebook comments, which Defendant found to be offensive, violent, and potentially threatening. Plaintiff's conduct is more akin to the plaintiff's conduct in Vanderhoff, whose employment was terminated for displaying a confederate flag sticker at work, than the plaintiff in Owens. Further, because the Owens court did not ultimately hold that the plaintiff's employer terminated the plaintiff for engaging in the political process but for using company equipment, materials, and time to do so, any discussion by the court

regarding what type of conduct implicates § 16-17-560 is dicta as well.

In sum, the only case to directly address the issue of what types of speech and/or conduct amount "to political opinions or the exercise of political rights and privileges" as used in § 16-17-560 is Vanderhoff, which narrowly construed the criminal statute to apply "only to matters directly related to the executive, legislative, and administrative branches of Government, such as political party affiliation, political campaign contributions, and the right to vote." Vanderhoff, 2003 WL 23691107, at *2; see also Bolden v. S.C. Dep't of Diabilities & Special Needs, No. 219CV01079RMGMGB, 2020 WL 3848225, at *13 (D.S.C. Mar. 2, 2020), report and recommendation adopted sub nom. Bolden v. S.C. Dep't of Disabilities & Special Needs, No. CV 2:19-1079-RMG, 2020 WL 1921576 (D.S.C. Apr. 21, 2020) (noting the plaintiff's "mistaken assumption that S.C. Code § 16-17-560 extends to all opinions and expressions protected under the First Amendment"); Horton v. Bennettsville Police Dep't, No. CV 4:18-1401-MGL-KDW, 2019 WL 9667776, at *14 (D.S.C. Nov. 15, 2019), report and recommendation adopted, No. 4:18-CV-01401-SAL, 2020 WL 2110769 (D.S.C. May 4, 2020) (noting that the plaintiff failed to point to any authority extending the reach of § 16-17-560 to rights other than political rights). Because Plaintiff's Facebook comments do not fall within this narrow construction, Plaintiff fails to state a claim for wrongful discharge in violation of public policy and dismissal of the cause of action is appropriate.

**V.     CONCLUSION**

For the reasons discussed above, it is recommended that Defendant's Partial Motion to Dismiss (ECF No. 12) be granted and Plaintiff's cause of action for wrongful discharge in violation of public policy be dismissed.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

September 16, 2021
Florence, South Carolina